Thomson, J.,
delivered the opinion of the court.
The defendants Goldhammer and Weiss were grocerymen in the city of Denver. In payment of a debt owing to them by a former occupant of a house owned by a Mr. Harris, they had taken a lot of furniture in that house. In pursuance of some negotiations between them and the plaintiff, Margaret Dyer, she rented the house from Mr. Harris and the furniture from the defendants. Her purpose in renting the house and furniture was to conduct a boarding house. The rent to be paid for the furniture was 117.50 per month. She gave her notes for four installments of the rent, and secured their payment by a chattel mortgage upon furniture of her own. They gave back an agreement to the effect that if, after payment of the first of the notes, she so .desired, her lease of the furniture should be canceled, providing she had paid all rent which had accrued at the time of the cancellation. She then moved into the house and kept it as a boarding house. When she had occupied it something over a month, the first installment of the rent of the furniture being *30 unpaid, the defendants took possession of the furniture and removed it from the house, the result being that she was unable longer to carry on her business. This suit was brought before a justice of the peace, and by appeal and change of venue finally found its way into the district court of Arapahoe county, where a trial resulted in a judgment for the plaintiff, by appeal from which the cause is now here.
There were no formal pleadings and we must look to the evidence for the cause of action. The testimony was in substance that before removing into the house she was conducting a boarding house in another locality in Denver, and was doing a good business; that she was approached by Harris and the defendants, who solicited her to rent this house and furniture, and upon her statement to the defendants that she had nob means to run the house, and could not do so unless she could obtain groceries upon monthly payments, to be made at the time she collected her money from her boarders, they agreed to furnish her with groceries on monthly credit to carry on the business; that she was induced by this agreement to leave the house she had been keeping, and remove into the Harris house; that upon applying to defendants for groceries they refused her any credit whatever, and she could not obtain credit elsewhere; that the house and furniture would accommodate thirty boarders, but that owing to her inability, from lack of means, to provide for that number, she was compelled to run the house with only ten, and to reject all further applications, of which she had a large number; that with the limited number of boarders to which, on account of the refusal of the defendants to perform their promise, she was compelled to confine herself, she ran the house at a loss, receiving for board $50.00 less than the amount expended for provisions; that the cost of removal into the house was $23.00; that the rent paid to Mr. Harris for the house was $40.00 per month; that she had been in the boarding house business seventeen or eighteen years, and that if she could have accommodated the boarders she turned away there would have been a profit *31 in the business of $75.00 or $80.00 per month. Her statements were contradicted by the defendants, but the jury awarded her $250, and judgment was entered upon the verdict after a motion for a new trial had been heard and denied.
It is argued that the evidence is insufficient to sustain the verdict. The rule in appellate courts, where the evidence is conflicting, is to accept the verdict of the jury as final upon controverted questions of fact. Any other rule would destroy the value of verdicts, and lead to endless confusion. Counsel admit the rule as of general application, but they say that in this case the plaintiff’s statements, upon their face, are so improbable and of such a doubtful and suspicious character, that they ought to be rejected from consideration. We see nothing improbable, doubtful or suspicious in the plaintiff’s story; it looks well enough on paper; and, as the jury, after seeing her on the stand, and hearing her testify, believed her as against the defendants, whom they also saw and heard-, we must accept her statements as true.
It is next objected that there was no proof of actual damage sustained by the plaintiff. We think counsel must have overlooked the evidence of the cost of removal from her former place of business to the Harris house, the rent paid for that house, and the loss sustained by reason of her inability to provide for more than one third of the boarders the house would accommodate. All this was surely actual damages. It represented money in fact lost to her in consequence of the breach by the defendants of their contract. But this is passed over unnoticed, and the argument directed to the testimony concerning profits. Counsel say in effect that the plaintiff ought to receive nothing for the destruction of her business, because her loss consisted in profits which she supposed, but could not know, she would have realized if she could have run her boarding house to its full capacity. It is well settled that in an action for breach of contract damages which are merely speculative are not recoverable. Whether the profits of which a party has been deprived shall be al *32 lowed depends upon the circumstances of the particular case in which they are claimed. Damages for breach of contract are not allowable if they are not the direct result of the breach, or if there are no data upon which they can be reasonably estimated. But where the breach is the immediate cause of the damage, and the extent of the loss sustained can be ascertained with reasonable certainty, the party responsible must make it good, whether it consists in unrealized profits or not. The courts have never denied compensation for profits lost merely because they were profits. They have refused to allow them where they were remote, imaginary, or impossible of ascertainment, but not where they were immediate, and there were criteria by which an estimate, approximately accurate, of their amount could be made. Wakeman v. Wheeler Wilson Mfg. Co., 101 N. Y. 205; Garsed v. Turner, 71 Pa. St. 56; Savery v. Ingersoll, 46 Hun, 176; Skagit R. & L. Co. v. Cole, 2 Wash. 57; 1 Sedgwick on Damages (8th ed.), sec. 177.
We think that in this case the proof was ample to authorize the submission of the question to the jury. The plaintiff had been in the boarding house business seventeen or eighteen years. She knew what the provisions cost with which she fed the ten boarders she had, and she knew the amount of other expense incurred. A portion at least of that expense would have been the same if her house had been full, and from her experience in the business it is presumed that she knew how much, if any, her entire expenses would have been increased had she been able to take the boarders she was compelled to turn away. She also knew what she would have received for board. She would have had the profits of four months’ occupancy of the house, and what they would have amounted to was susceptible of as accurate figuring as damages usually are. It is true she did not know that the boarders would have staid with her if she had taken them, but when a given state of facts appears, a legal presumption attaches to them, and it is presumed that if she could have taken the people who offered themselves they would have continued to board with her.
*33 Complaint is made of instructions given, of the refusal of the court to instruct as requested, and of an alleged interruption of the argument of counsel. It is not objected that the jury were misdirected. It is claimed only that the instructions were not sufficiently full. Neither side asked that they be made more specific, and the objection to them, which is made for the first time here, comes too late. They submitted the questions of fact involved fully and fairly, and directed the jury, if from the evidence they found the facts to be with the plaintiff, to assess her damages at such amount as they should find from the evidence would compensate her for the loss sustained. There is no error in the instruction. Garsed v. Turner, supra. Defendants requested instructions that no actual damages were proved, and that the plaintiff was not entitled to damages except in so far as she had not the information, time and ability necessary to prevent them. The evidence did not warrant such instructions and it would have been error to give them.
One of the grounds of the motion for a new trial was that one of the counsel for defendants was disturbed in his argument by the noise of impaneling a jury in another cause. His affidavit to that effect was filed in support of the motion. There was, however, a counter affidavit that there was no noise sufficient to disturb counsel or distract the attention of the jury. We cannot see that the ruling of the court on the motion was wrong. Whether the impaneling of a jury created such confusion as in. any way to lessen the effect of counsel’s argument was a question of fact upon which there was evidence on both sides, the weight and value of which it was the province of the court to determine. Moreover, the judge was, himself, personally cognizant of what occurred, and we cannot assume that he would allow counsel’s case to suffer detriment from any cause within his control.
Upon the case as the record presents it, we are not at liberty to reverse the judgment, and it will therefore be affirmed.

Affirmed.