## No. 11,815.

COLORADO NATIONAL BANK, ET AL. *v.* ASHCRAFT.

Decided December 19, 1927.   Rehearing denied January 9, 1928.

Action for damages.   Judgment for plaintiff.

*Affirmed.*

1.   APPEAL AND ERROR—*Sufficiency of Evidence.* Jury findings which are supported by sufficient evidence will not be disturbed on review.

2.   LANDLORD AND TENANT—*Possession—Instructions.* In an action for damages by lessee against lessor for the latter's refusal to deliver possession of the leased premises, requested instructions that it was the duty of the lessee to take possession of the premises immediatly after the execution of the lease, held, under the facts disclosed, to have been properly refused.

3.   *Possession—Instructions.* In an action for damages by lessee against lessor for the latter's refusal to deliver possession of the leased premises, the court gave an instruction to the effect that if the failure of lessee to move onto the premises for four months after the execution of the lease was caused by conditions over which he had no control, and that he intended to move onto them as quickly as conditions would permit, that he was not guilty of either abandonment, relinquishment or surrender of the lease. Held, that in the circumstances such instruction was proper.

4.  APPEAL AND ERROR—*Instructions—Specific Objections.* On review, only such objections to instructions as were specifically presented to the trial court will be considered.

5.  DAMAGES—*Special.* In an action for damages by lessee against lessor for the latter's refusal to deliver possession of the leased premises, the contention that it was error to permit the jury to find *any* special damages, overruled.

6.  LANDLORD AND TENANT—*Damages—Lost Profits.* Sometimes lost profits may be considered in determining the damages suffered by a lessee deprived of possession.

7.  DAMAGES—*Difficulty of Ascertainment.* The fact that the amount of damages can not be ascertained with certainty is no valid objection to the allowance of damages in some amount by a jury.

8.  VERDICT—*Excessive.* Under the facts disclosed, a verdict for $1,170 held not excessive for damages against a lessor for withholding possession of the leased premises from lessee.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Mr. PIERPONT FULLER, for plaintiffs in error.

Mr. B. A. GATES, for defendant in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

ASHCRAFT, the defendant in error, obtained a judgment against S. C. Osmer. After suing out a writ of error, Osmer died, and the Colorado National Bank, as executor of his will, and Lucy J. Osmer, as executrix thereof, were substituted as plaintiffs in error.

Osmer leased to Ashcraft for two years a dry farm near Sedalia. Ashcraft alleges that Osmer refused to permit him to enter into possession, and that Ashcraft has been damaged. Osmer denies such refusal and such damage, and alleges that Ashcraft abandoned, sur-

rendered and relinquished the lease, and forfeited all his rights in the leased premises. These allegations Ashcraft denies.

1.  It would serve no useful purpose to detail the evidence bearing on the affirmative defenses. The jury found for Ashcraft on these issues, and there was evidence sufficient to support such findings.

2.  Complaint is made of the refusal of the trial court to give Osmer's requested instructions numbered 6 and 7. These instructions, in effect, declare it to be the duty of Ashcraft to take possession of the premises "immediately" after the execution of the lease, and that his failure to do so was an abandonment of the premises, and justified Osmer in taking possession and leasing the premises to others. In the circumstances disclosed by the record, no such duty rested upon Ashcraft. There was no error in refusing to give the requested instructions. Osmer did not tender any request correctly stating the law on this subject.

3.  The giving of instruction No. 2 is assigned as error. The instruction is as follows: "If you find from a preponderance of the evidence in this case that plaintiff's failure to move onto said leased premises for four months after the execution of the lease was not voluntary on his part, but was caused by weather conditions, or other conditions over which he had no control, and that he intended to move onto said premises as quickly as conditions would permit, you will find that he was not guilty of either abandonment, relinquishment or surrender of said lease."

The lease was for the purpose of farming dry land. The rent to be paid was not cash, but a share of the crops. The lease was made November 16, 1925. There was evidence tending to show that that winter was a hard one. Testifying on behalf of Osmer, his agent, McCracken, said that that winter "was one of the hardest winters we had in that country for years. * * * The most snow fall we had in a number of years." This we found

in the transcript of the record; it is not in the abstract. Agnes Bolejack testified that she moved on the premises in January, and that, "We *had to* put six horses on a truck and *make* a road to get up there." This is copied from the transcript of the record. In the abstract the latter part appears thus: "We had six horses on a truck and made a road to get up there." Ashcraft testified that after the lease was made, he went back to his farm near Matheson, sold his farm and such farm machinery and stuff as he did not need on the Osmer farm, and was ready to move any time the weather would permit; that not until March did the weather permit, but that in the meantime Osmer rented the farm to the witness Agnes Bolejack for a cash rental. The witness Stees testified that he has a farm adjoining the Osmer ranch; that he went to his farm during the last of November or the first of December; that it was pretty nearly impossible to get anywhere, the snow was so deep; that he did not do any farming until May 1st; that the ground was not fit for farming—it was too wet; that he doesn't know what a man could have done in the way of farming in March or in the first part of April in that country; that the snow was on until late in April.

There was no error in giving instruction No. 2. It stated the law applicable to the facts.

4. Instruction No. 3, which the court gave to the jury, is said to be erroneous. The first part is as follows: "You are instructed that if you find for the plaintiff in this action, you may assess his damages in any sum, not however, exceeding the sum of $2,170.00; and in arriving at the amount of damages you may consider the difference, if you find any, between the rent which plaintiff would have to have paid defendant, and the probable return or [on?] crops which plaintiff could have raised on said premises, deducting therefrom the necessary expense of producing such crops."

The latter part relates to special damages. The objection to this instruction, made to the trial court, follows: "The defendant excepts to the giving of Instruction No. 3 for the reason that the question of damages to be awarded to the plaintiff, if any, should be confined to the reasonable value of the lease as a leashold, and the permitting of the jury to find any special damages is contrary to the law with reference to such matters."

The latter part of the objection did not call the trial court's attention to any specific item of special damages and claim that it is objectionable. Supreme Court Rule 7; *Schwalbe v. Postle,* 80 Colo. 1, 249 Pac. 495; *Sandner v. Temmer,* 81 Colo. 57, 253 Pac. 400; *Koontz v. People,* 82 Colo. 589, 263 Pac. 19. This part of the objection is based upon the broad proposition that it was error to permit the jury to find "any" special damages. This is untenable. 36 C. J. p. 57; *Cauble v. Hanson* (Tex. Civ. App.) 224 S. W. 922; *Driggs v. Dwight,* 17 Wend. 71, 31 Am. Dec. 283. As to the first part of the objection: It is true that the reasonable value of the lease—i. e., the reasonable value of the premises for the term—is what the lessee ordinarily is entitled to recover as damages where the lessor refuses to permit him to enter into possession. But there are various ways of determining such reasonable value. If such leases were bought and sold in the market, as are stocks and bonds, one familiar with such market value could testify thereto. But leases of dry farms in Colorado are not so disposed of. If the court instructed the jury that the measure of damages is the reasonable value of the lease, and stopped there, the jury would have received little or no assistance in this case. Sometimes lost profits may be considered in determining the damages sustained by a lessee who has been deprived of possession. *Gray v. Linton,* 38 Colo. 175, 88 Pac. 749. In that case we cited with approval *Goldhammer v. Dyer,* 7 Colo. App. 29, 32 Pac. 177, where the court said: "The courts have never denied compensation for profits lost merely because they were profits. They have refused to allow them where they

were remote, imaginary, or impossible of ascertainment, but not where they were immediate, and there were criteria by which an estimate, approximately accurate, of their amount could be made.''

See, also, *Boyle v. Bay,* 81 Colo. 125, 254 Pac. 156; *Anvil Mining Company v. Humble,* 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814. It is said that damages for lost profits should not have been allowed in the present case because there is no evidence of what crops had been raised upon the place in former years, and, therefore, that there was nothing that would afford the basis of an estimate of the profits, if any, that could or probably would have been made had Ashcraft been permitted to proceed under the lease. At the time Ashcraft took the lease, Osmer and his agent, McCracken, made certain statements concerning crops. But it is contended that those statements were but mere opinions relating not to what the corps had been but what they ''would be.'' The abstract, as prepared, lends some support to this contention; but an examination of the transcript of the record puts the matter in a somewhat different light. For example, the abstract has this: ''I was told by Osmer and McCracken about the crops. They said it *would go* from 10 to 20 to 25 bushels; corn *would go* around 20 or 25 bushels to the acre.'' Upon this and similar statements in the abstract is based the foregoing contention. Turning to the transcript, same folio, we find the testimony to be this: ''Q. Do you know what the usual crops on that place are? A. No. Q. Were you told by Osmer or any one for him about the crops? A. Yes. Q. By whom? A. By Mr. Osmer and Mr. McCracken. Q. Both of them? A. Yes, sir. Q. What did they tell you about the crops that *were raised* on this place? A. That it would go from 10 to 25 bushels. Q. What else, if anything? A. Corn would go around 20 or 25 bushels to the acre.'' It further appears from the testimony of Osmer himself, that at the time Ashcraft took the lease, Osmer told him that ''there *had been* about 200 acres of this in grain—wheat, and oats, some corn.

\* \* \*'' McCracken testified that four years before the trial, in "a very fair season," when they had "more rain than they had use for," a tenant raised on the farm 18 bushels of grain (wheat?) to the acre. There also is evidence that at the time Ashcraft took the lease, Osmer and his agent, McCracken, made certain statements as to what could be raised on the land. Referring to McCracken's representations, Ashcraft testified: "I told McCracken if he said [?] it was like he said it was, I would take the place. That was the understanding."

There is sufficient evidence to bring the case within the rule permitting the recovery of lost profits. The fact that they could not be ascertained with certainty, is not a valid objection. *Denver v. Bowen,* 67 Colo. 315, 319, 184 Pac. 357; *Big Five Min. Co. v. Left Hand Ditch Co.,* 73 Colo. 545, 216 Pac. 719; *Goldstein v. Rocky Mt. Envelope Co.,* 78 Colo. 341, 241 Pac. 1110; *Westesen v. Olathe State Bank,* 75 Colo. 340, 343, 225 Pac. 837. In the last case we said, "Where the cause of the damage is established, that the amount or extent of damages is uncertain is no objection"; and we quoted with approval the following language from the opinion in *Rule v. McGregor,* 117 Iowa 419, 90 N. W. 811: "Uncertainty as to the amount of damages is not an obstacle in the way of their allowance. Uncertainty as to the cause from which they proceed is what has occasioned trouble, and only when it cannot be ascertained with reasonable certainty that these have sprung from the breach alleged are they to be rejected as too remote, or conjectural or speculative."

The court did not err in giving instruction No. 3.

5. We cannot say that the verdict for $1,170 is excessive.

The judgment is affirmed.

MR. JUSTICE DENISON, sitting for MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS, and MR. JUSTICE CAMPBELL concur.