## FUQUA v. MADEWELL.—152 S. W. (2d), 133.

Middle Section. March 19, 1941.

Petition for Certiorari denied by Supreme Court, June 28, 1941.

Geo. B. Haile and F. E. Harris, both of Cookeville, for plaintiff in error L. A. Fuqua.

Worth Bryant, of Cookeville, and Solon Fitzpatrick, of Carthage, for defendant in error Hop Madewell.

CROWNOVER, P. J.—This is a suit by the lessee against the lessor for damages for breach of a rental contract of a farm on a share-cropping basis.

The defendant pleaded the general issue of not guilty.

The case was tried by the judge and a jury.

The defense was that the lessee had released the contract, or discharged the lessor from liability, which was denied by the plaintiff.

The jury returned a verdict of $325 in favor of the plaintiff Madewell against Fuqua, and judgment was entered accordingly, upon which judgment counsel for the plaintiff below was permitted, upon motion, to assert a lien for their reasonable attorneys' fees.

The defendant's motion for a new trial was overruled by the court, to which he excepted and appealed to this court and has assigned errors, which are, in substance, as follows:

(1) There is no evidence to support the verdict.

(2) There was no competent evidence as to the measure of damages.

The facts of the case as shown by the record are as follows:

The plaintiff Madewell and the defendant Fuqua, on September 5, 1938, entered into a written contract by which Fuqua leased to Madewell for the year 1939 a farm in Putnam County, for which Madewell agreed to give him a share of the crops and do certain work in the way of improving the lands.

It was a good farm with a desirable house, a good pasture, and corn and tobacco lands and he might have raised corn, tobacco, and chickens, and might have grazed his cattle on the pasture.

On November 7, 1938, Fuqua wrote a letter to Madewell stating that he was going to rent the farm to somebody else.

Madewell took the letter to his attorney, who wrote a letter, on November 15, 1938, to Fuqua, informing him that Madewell intended to carry out his contract and expected him to carry out his part of the contract.

On Monday, January 2, 1939, when Madewell went to take possession of the farm, he found it occupied. He so informed Fuqua, who refused to deliver possession to him.

At the hearing of the case Fuqua testified that after the execution of the written contract Madewell told him that he wanted to lease a smaller farm than this one; that Madewell agreed to write him in a few days telling him whether he would carry out his contract; that he heard nothing from Madewell; that George Manier later informed him that Madewell asked him to tell him (Fuqua) that he didn't intend to take possession of the farm, whereupon he leased it to another man.

Madewell denied telling Manier that he didn't intend to carry out his contract, and also denied telling Fuqua that he had any doubt about taking possession of the property.

 1. The jury found that Madewell had not agreed to discharge Fuqua from liability in regard to the lease, and, as above shown, there was evidence to support the verdict of the jury.

 The burden was upon Fuqua to show that Madewell had abandoned or rescinded the lease (1 C. J., 580, sec. 143; 1 C. J. S., Accord and Satisfaction, sec. 48), and he has failed to carry the burden.

A preponderance of evidence was necessary to establish the fact that the contract was discharged. 1 C. J., 582, sec. 148; 1 C. J. S., Accord and Satisfaction, sec. 48.

It is further contended by the defendant that Madewell was not in position to carry out the contract as he had owned no work stock; but Madewell testified that his son had one team and he had made arrangements to buy another team, which were sufficient for the cultivation of the land, but after defendant breached the contract he did not buy the team. However, this is no ground for the defendant's breach of the contract. Pardee v. Kanady, 100 N. Y., 121, 126, 2 N. E., 885; Brady v. Oliver, 125 Tenn., 595, 614, 147 S. W., 1135, 41 L. R. A. (N. S.), 60, Ann. Cas. 1913C, 376.

But the jury has settled these propositions and we are bound by their verdict.

2. The defendant's second assignment of error is that there was no competent evidence as to the plaintiff's damages; that the damages shown are speculative.

Madewell testified that he had agreed to plant 2½ acres in tobacco, which should have produced 1,200 pounds to the acre, and tobacco sold at 18c a pound, therefore the proceeds of the tobacco crop would have been $540; that 65 or 70 acres were suitable for corn, on which he might have produced five barrels to the acre, and corn sold at $3 a barrel, therefore the corn crop would have been worth $975; that he could have made a profit of about $50 on raising chickens; that the pasture was worth $100; and the occupancy of the house was worth $150.

We think the foregoing evidence was competent.

Under leases of farm lands the lessee is entitled to recover the loss of any profits he might reasonably have made from the demised premises as damages for a failure to receive possession. 32 Am. Jur. 185, sec. 194.

"In contrast to the situation with respect to leases of business property, it is generally, though not invariably, held under leases of farm lands that the lessee is entitled to recover the loss of any profits he might have made from the demised land as damages for a failure to receive possession." 104 A. L. R., 161.

"In case of the common 'cropping' agreement, that is, the lease of a farm for a share of the crop, to be given to the lessor by the lessee, the measure of damages for breach of contract by the lessor, either by failure to give possession or by eviction, is in general what the contract is worth; and the value of the crop which is raised or reasonably expected to be raised may be proved to establish the value." 3 Sedgwick on Damages, 9th Ed., 2055, sec. 989; Jonas v. Noel, 98 Tenn., 440, 39 S. W., 724, 36 L. R. A., 862.

"In a case where there was a letting on the shares and the owner of the premises refused to let the other party into possession, the latter

was allowed to recover the value of his contract, that is to say, what he could reasonably have made out of it, as his damages. To say that the plaintiff's damages should be measured by what he could have made on the farm is but another mode of saying he was entitled to the value of his bargain. It amounts to the same thing to charge that the plaintiff is entitled to be put in the same position, pecuniarily, as if the bargain had been kept.'' Jones on Landlord and Tenant, 175, sec. 140.

■ It is contended that the damages are speculative and for this reason the plaintiff is not entitled to any damages. ''The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which, he alone is responsible for making, were otherwise. Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S., 359, 379, 47 S. Ct., 400, 71 L. Ed., 684, 691.'' Nashville, C. & St. L. Railroad v. Davis, 21 Tenn. App., 663, 672, 114 S. W. (2d), 830, 831, 835.

■ The plaintiff was also entitled to the special damages that he pleaded and proved to have necessarily resulted from the breach of the contract (32 Am. Jur., 183, sec. 193), which in this case was the loss on the sale of his cattle, hogs, etc., which he was forced to sell because he had no farm.

The plaintiff testified that he had made an effort to rent another farm, but had not been able to find one.

All the assignments of errors having been overruled, it results that the judgment of the lower court is affirmed. A judgment will be entered in this court in favor of Hop Madewell against L. A. Fuqua for $325 together with interest from August 10, 1940, to the present and the costs of the cause. The costs of the appeal are adjudged against L. A. Fuqua and the sureties on his appeal bond.

Felts and Howell, JJ., concur.